1823.12 Donald Freed v. Michelle Thomas et al. Oral argument as follows, 10 minutes for the appellant, 5 minutes for the amicus, 15 minutes to be shared by the appellees. Mr. Ellison for the appellant, Ms. Martin for the amicus curiae. Good morning, your honors. Philip Ellison, as Mr. Ford noted, on behalf of Mr. Freed this morning, and as you correctly know, we are sharing our time with Pacific Legal Foundation. Because I'm very short, I will answer any questions that this court may have, but I will just start presenting. Feel free to interrupt at any particular point. I'm reserving two minutes for rebuttal. Your Part A, of course, is jurisdiction, and Part B, of course, is the merits. We would ask this court to rule on both Parts A and Parts B because the issue was raised and preserved below. However, we would minimally ask this court, of course, to reach Part A, jurisdictional issue. The whole case, whether it's TIA, the Tax Injunction Act, Comedy, or Wayside, all comes down to the same fundamental question. Does Michigan provide, and you can pick the term, speedy or efficient remedy, plain, adequate, or complete remedy, a reasonable, certain, or adequate remedy? Whatever words we want to use, the question is, does Michigan provide a remedy here? And the answer is not whether it provides a claim. They do provide a claim of inverse condemnation. That's recognized under Michigan law. But the particular flavor of the taking, in this particular instance, will not provide a remedy to Mr. Freed when bringing these cases before the Michigan courts. Counsel, I just... It seems to me that there's a line of Sixth Circuit cases interpreting 1341, Tax Injunction Act, that says a plain, speedy, and efficient remedy requires only a form, not relief. So that's Hedgepath versus Tennessee. It's Colonial Pipeline versus Morgan. It's Northwest Airlines versus Tennessee Board of Equalization, probably. All of those say the state need something like, the state need only provide a full hearing at which a taxpayer may present and secure a judicial determination at which he or she may raise any and all constitutional objections to the tax. The problem is, is that we can't raise those here. They're all precluded under Raffaele 1. They're not precluded. I mean, it's just you're going to lose on the merits. You can raise your claim. You may lose on the merits. I mean, it's an unpublished decision of the Michigan Court of Appeals. Well, and to be clear, that was going to be my next point, but I was going to bring up is it's not just the unpublished decision of the Michigan Court of Appeals. It also is two circuit court decisions, a Michigan Court of Claims decision, and the formal position of the state of Michigan itself within the Tim Lee Builders case. Everything that has come out, every court or officer of the law who has had the opportunity to take a position on this has said, the courts are not going to provide a remedy to- But if you're right, but what you want remedy to mean is, I win on the merits. And if you're right about that, then in order to determine our jurisdiction, we would first have to determine the merits of your claim. So in other words, if you had a losing claim on the merits, we would say, we don't have jurisdiction because you should go to state court where you will lose as you should. But if you have a winning claim on the merits, then you should come to federal court where you will win as you should because you won't get relief in state court. So we would have to decide the merits before we decide our jurisdiction. I disagree with that. I guess let me parse it out in two different ways when I was thinking about this in preparation here today. There's a difference between losing on the merits because you're, for example, not the owner of the property, or you have insufficient proofs. In that case, if that was the reason why, for example, if Raffaele came back and said you just didn't have enough proofs to make your claim, I would agree with you that that would not serve as a basis to be a plain, speedy, or efficient remedy preclusion in that respect. Because essentially, the person lost not because of the law, but because of their particular case and that particular instance in the proofs that they put forward. In this case, the distinction is if I walk into a Michigan court with these very claims themselves, the first thing that my opponents are going to say is, court of claims, state of Michigan, the court of appeals, all of these things are precluding you as a matter of law, meaning the claim can't be entertained at all because it's automatically removed. We know that's not really true because those are unpublished decisions. The court of claims is a trial court. Raffaele is an unpublished decision, which any other panel is free to ignore. They might be persuaded by the analysis in Raffaele, but they're not precluded. The unpublished decision does not have to follow the first panel. I would agree. I would agree. That is the standing precedent of the Michigan court of appeals. It's not precedent. I'm sorry. I should say the precedent of the standard for you can ignore the first panel is what I'm saying. Hasn't the Michigan Supreme Court accepted that case for argument? They have, but they only did so after both Judge Friedman dismissed this case as well as after I'd already taken an appeal to this particular court. Of course, jurisdiction is determined not from later events, but on the date that the complaint is actually filed, and that's the Cleveland Branch case. Is there anything that would preclude your client from now filing a claim in Michigan State Court? I understand you say I'm precluded because of Raffaele, but I mean, is there a time bar? Is there some procedural impediment to bringing your claim? I do not believe so, no. It could be brought. Again, I mean, we're putting a form over substance on this, obviously, but could I walk down to the Gratiot County Courthouse and file a complaint with Judge DeHoven in Ithaca, Michigan? Yes, I could in that respect. The problem is that the game is up before I even walk in, and I know you understand my theory on that. Not if the Supreme Court of Michigan makes a decision in the meantime, right? The problem... I mean, if they make a decision, you go down there to the local court, they'd have to accept your... However, what if the Michigan Supreme Court said no? Right now, the case of Raffaele, of course, is currently pending on the Court of Appeals. I would be precluded both in this court as well as, well, I guess I wouldn't be. I mean, because it was dismissal without prejudice, I could re-bring that claim here back in state court. Right. So, I guess the problem that I have is that the standard that applies in these is that, and I know I'm running short on time here, but the point of all of these rationales is that form should not trump substance here. And so what the argument is is that you can go through them, you have the chance to go through the motions in state court, and if you do, and you're going to lose, but, you know, it's too bad, so sad in that respect. And that's not... That can't possibly be when you have a constitutional right to such remedy. But that's not exactly true, right? So the, I mean, the Constitution only establishes the Supreme Court of the United States, and such lower courts as Congress may ordain and The original contemplation is there could be the Supreme Court and just the state courts, and then the state courts would decide these things, and then if they got it wrong, your remedy would be cert to the Supreme Court of the United States. So... Thank goodness Congress has given us the ability to bring these claims in federal court, because it is granted specifically federal courts, trial courts, original jurisdiction. Yes, but if they've stripped our jurisdiction in the Tax Injunction Act, then your remedy lies in state court, and if you lose in state court, then your remedy is certiorari. However, I would point out one thing, because we've been focusing on the TIA. The TIA does not preclude damage claims. It only precludes injunctions and declaratory relief. That's interesting. So you've asked for damages not for declaratory relief? I've asked for both. I've asked for both. And that's why Judge Friedman, when he went through in his original, what I call the freed one decision, he went through the different forms of relief that were specifically addressed in that respect. The plain language of the TIA actually only applies to injunctions, because the idea behind the TIA, of course, is to prevent, you know, basically folks running into federal court and getting an injunction against a tax collection rather than this respect. So that is as far as I have read the case law that the Supreme Court has gone into those two respects. Okay. I see your time is... And I will reserve the balance of my time. Thank you. May it please the Court. Christina Martin for Amicus Pacific Legal Foundation. A straightforward application of Supreme Court precedent shows that the county violated Mr. Fried's property rights, his just compensation rights, by taking more than... and keeping more than it was in penalties and fees. I want to address the merits a little bit, but first I'm just going to circle back to the jurisdictional question. There are three Supreme Court cases where the U.S. Supreme Court specifically said that a plain remedy under the Tax Injunction Act means there needs to... if it's uncertain, it doesn't satisfy the requirement of it being a plain remedy. And they did look to whether you would be able to prevail in state court to some extent. And those three cases are Georgia Railroad versus Redwine, that's 342 U.S. 299. Specter Motor Service versus McLaughlin, that's 323 U.S. 101. And Hillsboro versus Cromwell, and that's 326 U.S. 620. And they talk about the fact that uncertainty about whether the state remedy affords full protection to the federal rights is enough to satisfy federal jurisdiction. And so I think that the Tax Injunction Act, while Wayside Church understood the states as providing a just compensation remedy to the plaintiffs in that case, they said that they had to read the statute... they had to assume a constitutional construction of the General Property Tax Act and of Michigan law. So they assumed there was a just compensation remedy. We now know that that's not plain or certain. So your argument is if an intervening, unpublished decision of an intermediate appellate court, that makes the remedy uncertain? That's right. Because what you're left with, what somebody... Mr. Raffelli actually originally tried to file in federal court because he believed he would lose in state court. He went to state court, he lost in the trial court, he lost in the court of appeals. If he loses in the Michigan Court of Appeal, he can't go to federal court and enforce his rights there. Well, he can seek cert. He can seek cert, yeah, but that's a... I know. It's a super long shot. They take 1% of their cases that are filed. Right. And so the Tax Injunction Act, Congress did not intend to bar all claims. They intended to bar claims where there's a plain remedy in state court. What about the argument that the Tax Injunction Act doesn't bar damages claims? Is that... And was there a claim for damages in Wayside Church? There was a claim for just compensation, so that is damages, yes. Right. And so aren't we just bound by Wayside Church on the Tax Injunction Act piece unless we buy the theory that the plain, speedy and efficient remedy no longer exists because of Raffaelli? I think not. And there's a second reason why you wouldn't be barred, and that's because the court didn't actually reach the question of whether Raffaelli was challenging a tax collection. He wasn't. He wasn't challenging the amount of taxes. I said Raffaelli, but the opinion only discusses whether there's a remedy in state court. It does not discuss why what's going on is a tax. There's no analysis whatsoever. And so I think that that distinguishes this case because here the parties have explained, or Mr. Freed has explained, that they're not challenging the tax or the penalties or the interest or the fees. But they have to be challenging the collection, right? Because the only way to collect under Michigan law is to suck in the whole property, right? Now I've got my $1,000 that I need out of this $100,000 value. I'm the state. I take my $1,000. That's the only way to collect my $1,000. Now we can argue about whether it violates the Constitution not to give him the 98 back or the 48 that's left over after the sheriff's sale or whatever. But the collection mechanism in Michigan, rightly or wrongly, is to take the whole property. And so if we were to say that's not constitutional, we would be saying Michigan doesn't have a way to collect its tax. No. Michigan will be able to continue collecting property by foreclosing on it. They can continue to seize the title to the property. They can continue to keep it or sell it if they so wanted since Blackstone, since before Blackstone. Right now there's no legal mechanism for them to do that. So it would probably the county treasurer would... Right now the funds, as I understand them, go into the county treasury. So if the county treasurer of Gratiot County just writes a check to Mr. Freed, presumably the county treasurer has violated Michigan law because there's no statutory mechanism for dispersing what by statute are public funds to just some guy, right? Well, whatever the mechanism they want to go about doing it, the Constitution trumps state law. And so ultimately they do have that responsibility. I understand that, but we can't create a mechanism for... I mean, we aren't the legislature or we certainly aren't the state legislature. What we can do is say your tax collection scheme is unconstitutional, but it's not like there's some piece of it we can sever. Well, I think that you can sever it. It's not that they're collecting it wrong. It's that they're failing to give back what's not theirs. They're allowed to... And this practice of distress is ultimately what it arises from. The practice of taking any sort of property, subjecting it to auction and refunding the surplus. It was protected in Magna Carta. It was protected in England. It was protected in Michigan for up until sometime in the 20th century. Up until a statute came in and said, we're not going to do that anymore. Right. And that violates the takings clause. The failure to provide the remedy is the issue. It's not that they're collecting the tax. That's fine. They can continue to do that. It's a failure to provide the remedy. Yeah. Okay. Did you have one question? Well, what do you think the effect is of this case in the Supreme Court? Does it have any effect on this? Well, hopefully it will render the Wayside... Williamson County, rather, a dead letter as far as the jurisdictional question goes. But that won't affect the Tax Injunction Act. That won't affect the Tax Injunction Act, although that also arguably could have been dicta since it wasn't needed to reach the decision in Wayside Church. And they really did give rather short attention to it. They stated the rule and didn't provide any analysis about why what was being collected was a tax or why it qualified as collection as the Supreme Court has defined it. And so for that reason, we would ask that you reverse the trial court and that you recognize jurisdiction and that you recognize that this was an uncompensated taking. The failure to provide a remedy violated the Just Compensation Clause of the Constitution. Thank you. Good morning to the panel. May it please the Court, Douglas Curlow on behalf of Gratiot County and Treasurer Thomas. I can't help but be struck by the... Oh, and I should say that the Attorney General and I are splitting the time. There's an incredible amount of presumption in the plaintiff's case and argument to this Court. They presume, on the one hand, that the Michigan Supreme Court won't decide in favor of Raffaelli. In fact, as we point out in our brief, the Michigan Supreme Court has unsettled sections of the General Property Tax Act. In Seddon v. Wayne County, they said the notice provisions weren't adequate and that those had to be different procedures. So Raffaelli could very well prevail in the Michigan Supreme Court's speculative to say that he wouldn't. What are you suggesting? We hold up until Michigan Supreme Court makes a ruling and the Supreme Court of the U.S. does too? No, I'm saying that they're making a presumption that there's no remedy. And here they argue their case, no remedy, no case. It's been heard at all stages. As Judge Larson pointed out, they lost on the merits. The Supreme Court may still decide that they do have a constitutional claim and may say there is a remedy. So to say that there's no remedy is really so very presumptuous at this point. It's also there's a presumption that Nick will somehow overrule Williamson. We don't know. Maybe they will. I'm sure this Court's pretty good at reading the tea leaves as to what the Supreme Court's thinking better than me. As I read both of the oral argument proceedings on the Nick case, it looked to me like the Supreme Court was very heavily divided. But of course, as we've also seen, there have been very odd divisions of that court of late. And it's presumptuous to say that the Williamson County decision would be overturned. The court may in fact say, no, we were right. You have to exhaust your state court remedies first. Yeah, I understand all of that. I'm interested in the question. I want to think about the Tax Injunction Act. So if we, they argue, look, you're not enjoining the collection of any tax. We concede that Gratiot County can collect the tax. We concede that they can foreclose on the house. We concede that they can sell it at foreclosure sale. They just want a refund. And they've got two different numbers that they'd like. But they want something between $48,000 and $99,000, because you're only owed $1,000. So why aren't they right that that's not enjoining the collection of any tax? Well, it is in the sense, if you look at the Direct Marketing Association v. Broll case, Justice Thomas, in his majority opinion, went through and looked at the words assessment and levy and collection and said that he listed off a number of things which fell into the scope of the Tax Injunction Act. They included forfeitures. What we've got here, if you want to call it that, is a sort of forfeiture. They've lost the property, although I would say that that's an odd way to look at it, given our merits argument, is that, well, you failed to redeem. You had your opportunity to prevent the whole loss of the property in the first place had you taken advantage of the opportunity to redeem. There is a solution in that. You failed to, and then you lost title. It vested in the foreclosing governmental unit because you failed to take advantage of your opportunity to redeem it. And so you have no property interest left. I understand. But I don't want to argue the merits because, really, the State Attorney General, as you know, is charged by statute with defending the handiwork of the legislature. And I don't want to step on anything the State's position might be because my ultimate position is you're suing the wrong people. As you pointed out, Michelle Thomas and the County of Gratiot can't do anything but what they did. Even if they would like to write a refund check to Mr. Freed, to do so would violate state law and subject them to everything from criminal penalty to Michelle Thomas herself to mandamus by other people who would think they weren't enforcing state law. They're really caught. This is, as the District Court recognized, this is a facial challenge to a provision of the Michigan General Property Tax Act. That's why he invited the Attorney General to step in in the first place. It can't be a Monell claim against Gratiot County because they didn't author the policy. And Michelle Thomas would have immunity for enforcing state law that no court has yet declared to be invalid. Who should be sued in this case? Pardon me? Who should be sued? Are you saying nobody should be sued? No, no. I'm saying that if you've got a problem with a facial challenge to a state statute, you should choose a state in this Court of Claims. Michigan affords a remedy for people to sue for an unconstitutional statute in the Court of Claims where the Attorney General can step up and argue whether or not and defend the statute. I'm saying that you can't hold a local government liable for enforcing state law. Otherwise, you're incentivizing local officials to say, well, you know, we have a different idea than the state legislature. We might be liable, so we're not going to enforce state law. You mean every time somebody sues over something they claim is unconstitutional taking that they have to go through the Court of Claims? Oh, no, not necessarily because the county itself could affect the taking. For example, if the county... Well, I mean under state law. Oh, if they're acting... I mean there are suits all the time that go against the governor or the secretary of state or all sorts of state people and they don't go through a Court of Claims. Well, in Michigan, if you're going to sue the state, you have to go to the Court of Claims. And if it's a state statute, that's where you should go. If you're suing the county for an action of its own, for example, say the county passed a zoning ordinance and they were enforcing that and that resulted in a taking, well, sure, you can sue the county in the circuit court. That happens all the time. That's where inverse condemnation was created in that context. Or say the city of Detroit seizes land for its airport. That's one of the cases I know exists. Of course you could sue the city of Detroit for that. But in this case, it's really the state that should be on the hook. But to return to the Tax Injunction Act, what we've got is a situation where there has been a form of collection by a type of forfeiture or seizure of property. And under the Direct Marketing Association case, the Supreme Court said that is part of the collection. That's what falls within the scope of that act. We've still got ripeness unless, I'm sure before this Court makes a decision on this case, we will have an answer in Nick which may eliminate the ripeness argument or may bolster the ripeness argument. I'm not going to speculate about what I think they're going to do. And then of course we have comedy. It's not jurisdictional. But the Supreme Court has made clear, the case law is cited in my brief, that really the courts should take a hands-off approach to state court tax administration. Let the state courts work it through, I suppose. And then if you're done, as Judge Larson points out, you can always petition to the Supreme Court to overrule the Supreme Court or the highest court you can get a decision from in the state. I think my brief pretty much covers it. I've got a few more questions. I'll turn it over to the Attorney General. Thank you. Good morning, Your Honors. Assistant Attorney General, to make it clear, Assistant Attorney General. Matt Hodges appearing on behalf of the Department of Attorney General. I think it just bears reminder, I know the Court knows, we're here on a fine because there has been a lot of merits argument. And this is a pretty straightforward analysis under this Court's decision in Wayside, which remains binding and remains correct. There are remedies available in state courts. The Michigan Supreme Court has reaffirmed that, if anything, in its recent decision to take up the Raffaele. And as Judge Larson knows, there has been a trend toward what they call mini-arguments on applications in the state, which is a shortened version to see whether they're eventually going to take the full case and brief it. This is a full grant. They're going to take this. Last time I checked, there are, I think, 25 people on the service list. They're going to hear that argument not until fall? Probably not until October, if I had to guess. I know it won't be this summer. It hasn't been put on the most recent call and was only just recently fully briefed. But all three of the principles cited in Wayside and by the lower court here, comedy, the Tax Injunction Act, and ripeness, are principles of federalism. And this is working the way it's supposed to work. This was sent back to the lower court in Wayside to dismiss for lack of jurisdiction, and the state court is taking a look at it. And this isn't the first time the court has touched on this, the court being the Michigan Supreme Court. There was an earlier case, and we put it in our brief, that County Circuit Court, and there were multiple theories of recovery for a bank that had been foreclosed on, its interest had been foreclosed on by the tax law. And they prevailed on a tort theory, and the Court of Appeals affirmed, saying you didn't have notice and there was a constitutional tort and you're entitled to damages. The Michigan Supreme Court reversed and said, no, due process was satisfied, you had notice, but we're going to remand for the remaining issues that weren't legally taking without just compensation. And for whatever reason, on remand, they never litigated their case, they didn't prosecute it, and it was eventually dismissed, I think administratively, with no pursuit of it. Another example, the side-on case. So is the point of all of that to say, I guess I'm confused about why, to what extent courts will declare Mr. Freed the winner? Sure, and I think you hit the nail on the head with that line of questioning. It's not about result so much as access to recognition of these rights and remedies. But of course, you know, if he went and they said, well, you know, we don't recognize, they just said we don't recognize the Fifth Amendment. Like, we're Michigan, we have our own way, we don't recognize the Fifth Amendment, we don't recognize takings claims. I mean, would you say he has a remedy? You can bring your takings claim here and we will, you know, not listen. No, an absolute bar, no. I would not say that's the case. And I would say that if that sort of... But isn't that the effect? I mean, Raffaele, I understand, is an unpublished decision. If it were, if the Supreme Court affirms, then won't that be the case in Michigan? I don't think that will be the case. I think that there are, and this is getting into the merits a little bit, but having been asked, I'll dive into the weeds a little bit. I think that this is a system that has been implemented by the state that is comprehensive front to back. If we look at the entirety of this taxing statute, we have remedies throughout. And the Supreme Court is going to decide how far out they go. But we can't ignore the fact that we've had a series of procedures and remedies and options available up throughout, throughout the entire process prior to that cutoff at foreclosure. So what are the remedies that Mr. Fried should have taken advantage of? Completely avoiding a loss at all. And I'm not being facetious here. I don't mean, well, he should have just paid. I mean, that is one option. There is the option of showing up to an administrative show cause hearing, to a circuit court hearing, pleading that he has a financial hardship. He can tell the court, I can't afford to pay right now. I need some more time. Can I have more time? And the court can sell the property himself. If he wants the proceeds from a sale of property, he can sell it, satisfy the taxes out of the proceeds and keep it. But if his... There's no other way to approach the constitutional issue other than what he's done, right? I would say that given that Michigan circuit courts are courts of broad jurisdiction and you can raise constitutional claims in the state circuit courts, there's nothing precluding you from raising that as a claim. It may get converted. But I thought counsel for Gratiot County says, well, you're not supposed to be in the circuit court. You're supposed to be in the court of claims anyway. I think we have two problems here. If you wait until after... So you have an entire circuit court proceeding in front of a judge to handle the initial taxing. You're late, now you're delinquent, now you're forfeited, now you're on the fence. You've got that entire process. If you wait until after that's closed and you decide you're going to sue the state or you're going to sue on the constitutionality of a statute after the fact in an original action, then you're going to the court of claims. Okay. If Mr. Freed wins his case, will Michigan County still be able to use foreclosure as a means to collect back taxes? If Mr. Freed wins this case here today... Well, if he wins ultimately. So I guess my question really keeps going back to the Tax Injunction Act. He says you're not enjoining a tax. You can entertain this claim in federal court because we concede that they have the ability to tax. They have the ability to take my house. They have the ability to sell it at a foreclosure sale. They just have to give me the money back, the difference. That's all he's asking for. He says you get my thousand bucks. So the Tax Injunction Act is not implicated. That's his argument. Why is he wrong? Because it is part of the collection process. And it was... the line of questioning was exactly on point. This is one of the collection methods. One is paying the taxes and actually cash, taking the money in. The other is in an redemption period and the property is given over in satisfaction of the tax. Sometimes it's enough. Sometimes it's not enough. There's no deficiency in that event. This is part of the collection process and it cannot be severed. And this would also touch on state property rights to some extent and the efficiency of the collection process afterward. If we're talking about rights surviving the foreclosure process, you have three years. It's cut off, but not really cut off. You're talking about how lien holders and stakeholders and claimants can kind of hang around and see what happens. You're talking about going right back to where the law was before where you sold liens for year one and then it was delinquent again and you sold liens for year two and three and four and all of a sudden there's clout on title and litigation for five or six years. I see my time is running short here. I don't know if you have any other questions. Are you saying the Tax Injunction Act precludes this remedy or allows it? Precludes this court's review. I would agree with the published decision in Wayside and if the federal courts need to weigh in on this, it will be after Raffaelli. It will be after the Michigan Supreme Court addresses what remedies are available at this point, whether this is constitutional or not, whether he should be compensated and if he does not prevail, it would be cert. Thank you. Thank you, Your Honor. We reserve some rebuttal time. Barry, I have two minutes to sell my case and I think you hit on the question exactly right on the head. Everything's done. They levied, they collected, they paid. The tax is all paid. I would point this court to Coleman. Coleman and I think I actually started the brief. I was just trying to look to see it before. I think I started my brief by saying this case is just like Coleman. I would ask this court to adopt Judge Sullivan's, I know it's a district court decision, but Judge Sullivan's analysis is spot on as it comes to the TIA issue, which of course is what we focused on here today. The second point that I keep hearing and it just wants me to pull my hair out when I hear it, the section 1983, a 1983 claim is specifically directed towards the person who conducted the act. 1983, the language of it says a person who's acting under the color of a statute. So it doesn't have to be the author of the statute, it's the person who's conducting the act. And that's why 1983 was provided. Of course, this is this post-Civil War dealing with racial discrimination in the South. Because in the South they'd say, well, we did this because the state of Alabama or the state of Mississippi has given us the power to do so. It provides this court the remedy to be able to say, states, you can't do that which is unconstitutional. We can go after the individual that caused that constitutional harm. Here, the person that caused that harm is Michelle Thomas and the County of Gratiot in that respect. My very last point that I'd like to make, and I think it's, I was just actually writing about this yesterday. The arguments of the state, it's been consistently that the Fifth Amendment should not apply because we give a lot of due process. That's essentially what they're arguing here. We have a lot of due process on the front end, so the back end shouldn't be there. The language of the Fifth Amendment is not conditional. The Fifth Amendment doesn't say you have to pay just compensation unless you provided a lot of due process first. They've cited no case law that says that an inordinate amount, even an inornment amount, and I don't think it's inornment, but a huge amount of due process somehow excuses that obligation, and I would ask the court to rule accordingly. Thank you very much. All right. Well, thank you both for your arguments in this very interesting case. I think we are ready to adjourn court. The case is submitted, and you may adjourn court.